**Affirmed and Opinion filed April 23, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00303-CR

## STEVEN ELLIOTT LOLLIE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court at Law No. 11**
**Harris County, Texas**
**Trial Court Cause No. 1914880**

## O P I N I O N

Appellant Steven Elliot Lollie appeals the trial court's denial of a motion to suppress. Appellant alleges that incriminating evidence was seized as a result of an unlawful detention. Because the record supports that the arresting officer was fulfilling a community caretaking function at the time he encountered appellant,

we conclude that the trial court did not commit error in denying appellant's motion to suppress. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 24, 2013, Tyler Gossett, a deputy constable with the Office of the Harris County Constable Precinct 8 was on patrol in the vicinity of South Beltway 8 East in Harris County, Texas. At approximately 2:30 AM, Deputy Gossett observed appellant driving a vehicle very slowly in the far right lane of the feeder road with the vehicle's left turn signal flashing. Deputy Gossett also observed that the front left tire of the vehicle was flat and the vehicle was "rocking back and forth" as a result. After appellant drove past the entrance to a neighborhood, Deputy Gossett initiated a stop of the vehicle. Appellant exited his vehicle, and was eventually arrested for suspicion of driving while intoxicated.

Appellant was charged by information with the offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West 2011). Appellant moved to suppress the evidence obtained as a result of the stop of his vehicle. After an evidentiary hearing, the trial court denied the motion to suppress. Pursuant to a plea agreement, appellant pled guilty and was sentenced to 180 days in jail. The trial court suspended the sentence and placed appellant on community supervision for one year. The trial court certified appellant's right to appeal matters raised before trial, and appellant timely appealed.

## ANALYSIS

### *Did the Trial Court Err in Denying Appellant's Motion to Suppress?*

In his sole issue, appellant claims the trial court erred in denying his motion to suppress because there was no evidence that Deputy Gossett was motivated by the community caretaking function in stopping appellant's vehicle and because

Deputy Gossett lacked probable cause or reasonable suspicion when he stopped appellant's vehicle. The State concedes that there was neither probable cause nor reasonable suspicion to justify the stop of appellant's vehicle, so we need not address that contention. Instead, we focus exclusively on the community caretaking function as the justification for the stop that led to appellant's arrest.

**The Standard of Review**

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011) (per curiam). In conducting this review, appellate courts employ a bifurcated standard. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). A trial court's determinations of historical facts and mixed questions of law and fact that rely on credibility are given almost total deference when supported by the record. *Id.* But pure questions of law and mixed questions of law and fact that do not rely on credibility determinations are reviewed de novo. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

We view the evidence in the light most favorable to the trial court's ruling, regardless of whether the trial court granted or denied the motion to suppress. *State v. Woodward*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). "When the trial court does not issue findings of fact, as here, findings that support the trial court's ruling are implied if the evidence, viewed in a light most favorable to the ruling, supports those findings." *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

**The Community Caretaking Function**

In the case of *Cady v. Dombrowski*, the Supreme Court of the United States acknowledged that state and local law enforcement officers frequently engage in "community caretaking functions" that are "totally divorced from the detection,

3

investigation, or acquisition of evidence relating to the violation of a criminal statute." 413 U.S. 433, 441 (1973). Accordingly, the Supreme Court recognized that in the context of such community caretaking activities, there are circumstances where warrantless searches or seizures by law enforcement may be reasonable, and therefore consistent with the Fourth Amendment. *See id.* at 447–48. The Texas Court of Criminal Appeals expressly adopted the community caretaking exception to the warrant requirement in *Wright v. State*, 7 S.W.3d 148 (Tex. Crim. App. 1999), and subsequently clarified the exception in *Corbin v. State*, 85 S.W.3d 272 (Tex. Crim. App. 2002), and *Gonzales v. State*, 369 S.W.3d 851 (Tex. Crim. App. 2012). As applied in Texas, an officer's community caretaking function may be invoked where an officer stops and assists an individual "whom a reasonable person—given the totality of the circumstances—would believe is in need of help." *Wright*, 7 S.W.3d at 151.

Whether an officer properly invoked his or her community caretaking function requires a two-step inquiry. Courts must determine: (1) as a subjective matter, whether the officer was primarily motivated by a community caretaking purpose; and (2) whether the officer's belief that the individual needed help was objectively reasonable. *Gonzales*, 369 S.W.3d at 854–55. To determine the reasonableness of the police officer's belief that an individual needs assistance, courts are to consider the following nonexclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Id.* at 855; *see also Corbin,* 85 S.W.3d at 277. For purposes of our review, we consider all of the forgoing factors.

4

**Deputy Gossett's Subjective Belief that He Was Engaging in a Community Caretaking Function**

The record before us supports the trial court's implicit finding that Deputy Gossett was primarily motivated by community caretaking concerns in stopping appellant's vehicle. Deputy Gossett testified that appellant's vehicle was a "traffic hazard," "traveling very slowly in a dark area on the feeder road," where "[t]here are no shoulders" on that portion of the road. Deputy Gossett further testified that he thought that appellant's vehicle "may have been involved in a crash, having the deflated tires." Deputy Gossett also testified that it could be dangerous to "drive that slowly" in a "dark section" of the roadway, and that it would not have been safe to continue driving to the nearest gas or service station. He noted that he had prior experience with fatal accidents on the feeder road where stranded vehicles on the side of the road had been struck from behind. Finally, Deputy Gossett testified that he believed appellant was in need of assistance, and that he was "serving [his] duty for community caretaking." When viewed in its entirety, the testimony supports the trial court's implied finding that Deputy Gossett's primary motivation for stopping appellant's vehicle was based on community caretaking concerns.

**The Objective Reasonableness of Deputy Gossett's Belief**

**(1) The Distress Exhibited By Appellant**

The Court of Criminal Appeals has stated that "the nature and level of the distress exhibited by the individual" is the factor entitled to the greatest weight in the analysis, but the Court has also noted that this factor is not dispositive. *Gonzales*, 369 S.W.3d at 855; *Corbin*, 85 S.W.3d at 277. "A particular level of exhibited distress may be seen as more or less serious depending on the presence or absence of the remaining three factors." *Corbin*, 95 S.W.3d at 277. The Court has not explicitly defined what constitutes "distress" for purposes of this factor.

5

But, we find useful guidance from decisions evaluating the community caretaking function.

Among Deputy Gossett's observations prior to initiating the stop was the fact that one of appellant's tires was "deflated,"[1] and the vehicle was "rocking back forth as it traveled down the roadway." In *Gonzales*, the Court of Criminal Appeals upheld the invocation of the community caretaking function when an officer pulled behind a vehicle that had stopped on the shoulder and the officer stated that he was checking to see if the driver had a flat tire or needed some other assistance. 369 S.W.3d at 853. In evaluating the stop, the Court stated that the officer "could have reasonably concluded that [the driver] was suffering from distress resulting from *car trouble, a flat tire,* or running out of gas—a distress no less significant to an officer's function as a public servant." *Id.* at 856 (emphasis added). Also, in *Lebron v. State*, an officer observed the defendant driving with two flat tires before coming to a stop on the roadway. 35 S.W.3d 774, 776 (Tex. App.—Texarkana 2001, pet. ref'd). In affirming the application of the community caretaking exception, the court stated that the defendant was "a motorist in obvious distress" because "a reasonable person . . . would have believed that the driver of the truck needed help." *Id.* at 777. Here, therefore, the observed condition of appellant's vehicle provided an indication that appellant was in distress.

Another observation made by Deputy Gossett was that appellant's vehicle was "traveling at a very slow speed" in the far-right lane of a roadway where there are no shoulders. In *Bilyeu v. State*, the appeals court noted that the appellant was observed driving at ten miles per hour, 15 miles per hour less than the posted speed limit, as one of the facts (in conjunction with others) that justified a vehicle stop on

---

[1] Upon stopping appellant's vehicle, Deputy Gossett observed that appellant's vehicle had two flat tires rather than just one.

the basis of the community caretaking function. 136 S.W.3d 691, 698 (Tex. App.—Texarkana 2004, no pet.). Likewise, in *Ortega v. State*, the appeals court noted that the appellant was driving at less than half the posted speed limit as "perhaps [the] most important[ ]" fact justifying the stop of the appellant's vehicle as an exercise of community caretaking. 974 S.W.2d 361, 364 (Tex. App.—San Antonio 1998, pet. ref'd); *see also Cunningham v. State*, 966 S.W.2d 811, 812–13 (Tex. App.—Beaumont 1998, no pet.) (concluding stop justified under the community caretaking exception where, among other factors, officer observed appellant driving on a flat tire at about five miles per hour on the shoulder of the road).[2] Therefore, appellant's slow speed of travel in far-right of the roadway, particularly when coupled with the flat tire and rocking of appellant's vehicle, was further indication that appellant was in distress.

We conclude that there were sufficient indicia to Deputy Gossett that appellant was in distress. Therefore, the first factor is satisfied.

### (2) Appellant's Isolated Location

The next factor that we consider is "the location of the individual." *Gonzales,* 369 S.W.3d at 855. In *Corbin*, the Court of Criminal Appeals indicated that an "area [that] is isolated with little traffic and no business or houses nearby" would satisfy this factor. 85 S.W.3d at 278. In *Gonzales*, the Court again provided an example of an "isolated area" as one with "no houses nearby . . . only a few businesses in the area . . . [and] minimal traffic on the highway at that hour." 369

---

[2] Although both *Ortega* and *Cunningham* were decided before the Court of Criminal Appeals adopted the "distress" factor in *Wright*, these cases are nonetheless instructive. The court in *Ortega* concluded that the officer had "an objectively reasonable basis for having a legitimate apprehension about [the appellant's] welfare." 974 S.W.2d at 364. And in *Cunningham*, the court stated that "[a] police officer has a legitimate role as a public servant to assist those in distress," and, therefore, the officer was justified in stopping the appellant to inquire about her safety. 966 S.W.2d at 813.

S.W.3d at 856. Here, Deputy Gossett stopped appellant on a one-way feeder road next to the Beltway 8 tollway. Deputy Gossett testified that he did not observe any other traffic after stopping appellant. Although there was a neighborhood in the general vicinity, appellant passed the entrance to the neighborhood before Deputy Gossett initiated the stop. Finally, the nearest service station was three-quarters of a mile in the opposite direction, and the nearest gas station was "two or three miles" ahead and was "closed at that time of night." Deputy Gossett testified that it would not have been safe for appellant to drive his vehicle, with the deflated tire, to the nearest gas or service station. As in *Corbin* and *Gonzales*, the lack of traffic or accessible establishments in the immediate area make appellant's location on the feeder road sufficiently isolated to satisfy the second factor. *See Gonzales,* 369 S.W.3d at 856; *Corbin,* 85 S.W.3d at 278.

### (3) Appellant Appeared Alone and Without Access to Assistance

The next factor we consider is "whether or not the individual was alone and/or had access to assistance independent of that offered by the officer." *Gonzales,* 369 S.W.3d at 855. At the motion to suppress hearing, appellant argued that this factor weighed against the stop. Appellant asserts that because Deputy Gossett discovered a passenger in the vehicle after making the stop, appellant was not "alone" for purposes of the test. However, the controlling analysis is whether the officer's belief was reasonable given the officer's observations. Here, when asked whether he knew if there was anyone else in the car, Deputy Gossett responded "[a]t the time that I stopped him, no." Deputy Gossett further testified that he did not believe there was anyone to offer appellant any help other than what Deputy Gossett was going to offer. Although Deputy Gossett eventually discovered a passenger, Deputy Gossett was unaware at the time he made the stop of anyone who could assist appellant. Given that appellant was on an isolated

8

stretch of road and appeared at the time of the stop to be the sole occupant of the vehicle, we conclude that appellant was "alone" for purposes of this analysis, thereby satisfying the third factor. *See Gonzales*, 369 S.W.3d at 856 (noting that it was unclear whether officer knew or could have determined if there were any other passengers in the vehicle, but concluding that appellant's access to assistance was limited given the appellant's location, the time of night, and the light traffic).

### (4) Appellant's Danger to Himself

The final factor we consider is "to what extent the individual—if not assisted—presented a danger to himself or others." *Id.* at 855. In its brief, the State concedes that appellant did not present a significant danger to others because he was alone on the roadway at the time of the stop. Therefore, we only consider whether appellant posed a "danger to himself." *Id*. Deputy Gossett testified that it would have been unsafe for appellant to continue to drive given the condition of his vehicle. Due to the fact that appellant's vehicle had a flat tire and was "rocking back and forth" even at a very slow rate of speed, one could infer that appellant's ability to effectively control the vehicle and operate it safely on the roadways was compromised. *See id.* at 854 (stating that reviewing courts are to afford the prevailing party all reasonable inferences that may be drawn from the evidence). Therefore, it was reasonable for Deputy Gossett to conclude that appellant presented a danger to himself by continuing to operate the vehicle in its existing condition. *Cf. Lebron*, 35 S.W.3d at 777 (concluding that circumstances "presented a danger to the driver" where vehicle was traveling slowly with two flat tires and eventually came to a stop in the middle of the roadway).

### CONCLUSION

Based on the totality of the circumstances as established by the evidence in the record, we conclude that the evidence supports the trial court's implied finding

9

that Deputy Gossett subjectively believed he was acting in his community caretaking function by initiating a stop of appellant's vehicle. We further conclude that Deputy Gossett's subjective belief was objectively reasonable, because there was sufficient indicia of distress at the time Deputy Gossett stopped appellant's vehicle, and that indication of distress was amplified by the fact that appellant was in an isolated location, without apparent access to assistance, and presented a danger to himself. Therefore, Deputy Gossett's stop of appellant's vehicle was proper under the community caretaking exception, and the trial court did not err in denying appellant's motion to suppress. Accordingly, we overrule appellant's sole issue and affirm the judgment of the trial court.

/s/    Marc W. Brown
Justice

Panel consists of Justices Jamison, Busby, and Brown.

Publish—TEX. R. APP. P. 47.2(b).