

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-15-00195-CR

JASON DEARMOND                                                      APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY
TRIAL COURT NO. CR-2014-08239-D

----------

## OPINION

----------

Appellant Jason Dearmond appeals from his conviction for driving while intoxicated. In a sole issue, he argues that the trial court erred and abused its discretion by denying his pretrial motion to suppress. Because the totality of the circumstances as found by the trial court supported the conclusions that the arresting officer had reasonable suspicion to stop Dearmond's car and that the

community-caretaking function justified the stop, we affirm the trial court's denial of the motion to suppress.

## I. BACKGROUND

On July 2, 2014, at 11:30 p.m., Officer Tim Henderson, while on patrol in a residential area, heard the repeated "thud" sound of a flat tire. Henderson then saw a car with two flat tires on the driver's side of the car drive by Henderson's patrol car and stop at an intersection. Fearing for the driver's safety and that of the general public, Henderson turned on his patrol lights, with the intent to offer the driver help with the flat tires, and initiated a traffic stop. Henderson stated that once he saw the flat tires, he pulled behind the car and "activated [his] overhead emergency lights on [his] patrol vehicle to initiate contact with the motorist and check their welfare on the concern of their flat tires and offer any assistance." Henderson also "radioed in to dispatch [his] location and that [he would] be out to assist a motorist with a flat tire." Henderson stated that the flat tires raised safety concerns:

> Safety concerns to the driver, any occupants of the vehicle, and also the general public. If that driver loses control of the vehicle because of the two flat tires, you know, he's not going to be able to control the vehicle safely and possibly cause either property damage or physical harm to anybody in the area.

He further believed that it was unsafe to drive on two flat tires: "When a vehicle has a flat tire, it affects the safety of the vehicle, controlling steering, braking, and just overall control of the vehicle. Makes it more difficult to safely maneuver on the roadway."

2

As he approached the car, Henderson confirmed that the car had two flat tires, and he smelled the strong odor of burning tire rubber. Henderson asked the driver, Dearmond, if he knew he had two flat tires, and Dearmond said that he had only one flat tire. Henderson saw that Dearmond's eyes were glassy and dilated. Dearmond admitted to Henderson that he had drunk "a couple" of "whiskey[s]" that night. When Henderson asked Dearmond to get out of his car, Dearmond was unsteady on his feet and had no shoes on. Dearmond's performance on the field-sobriety tests caused Henderson to conclude that Dearmond had "lost the normal use of his mental and physical faculties by reason of the introduction of an alcoholic beverage and was therefore, intoxicated." Henderson then placed him in handcuffs and arrested him for driving while intoxicated. A search of Dearmond's car revealed a "partially consumed" bottle of whiskey. Dearmond did not consent to a breath test, and a magistrate issued a search warrant for Dearmond's blood and, later, an arrest warrant. *See* Tex. Code Crim. Proc. Ann. art. 15.03 (West 2015), art. 18.01 (West Supp. 2015). Dearmond's blood-alcohol content was 0.271, and he was charged by information with the Class A misdemeanor offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a), (d) (West Supp. 2015).

Dearmond filed a pretrial motion to suppress any evidence that was the result of the stop, including his field-sobriety tests and the blood-test results, based on "the illegal arrest, detention, and search of [Dearmond] and the search of the vehicle where the Defendant was arrested." At the hearing on his motion,

3

Dearmond argued that Henderson did not have reasonable suspicion to initially stop his car because the flat tires did not qualify as an unsafe driving condition equating to an offense. He further challenged the applicability of the community-caretaking justification. Henderson was the only witness at the hearing and testified to the facts leading to Henderson's initial stop. A video of Henderson's stop and subsequent investigation showed that Dearmond's car had at least one flat tire on the driver's side of the car.[1] After considering Henderson's testimony and the video, the trial court denied the motion and entered findings of fact and conclusions of law. The trial court concluded that the State established reasonable suspicion based on specific articulable facts, combined with rational inferences derived from those facts, that "defendant committed the offense defined in Transportation Code Sec. 547.004." The trial court also concluded that the stop was justified under law enforcement's community-caretaking function because the totality of the circumstances would lead a reasonable person to believe that Dearmond was in need of help.

Dearmond then pleaded nolo contendere to the information, and the trial court assessed his punishment at 320 days' confinement, the imposition of which was suspended, and placed him on community supervision for 20 months. Dearmond appeals the denial of his pretrial motion to suppress. *See* Tex. Code

---

[1]Henderson told Dearmond that he had two flat tires when he approached the car, but the camera angle on the video shows only the front driver's tire, which was flat. Henderson testified, and the trial court found, that both of the driver's side tires were flat.

Crim. Proc. Ann. art. 44.02 (West 2006); Tex. R. App. P. 25.2(a)(2)(A). Dearmond argues on appeal, as he did in the trial court, that Henderson did not have specific, articulable facts providing reasonable suspicion to initially stop his car and that Henderson's stop cannot be justified under the community-caretaking function.

## II. APPLICABLE LAW

### A. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Id.*; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

### B. REASONABLE SUSPICION

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968). An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). Reasonable suspicion exists

5

when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts would lead him to objectively and reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

### C. COMMUNITY CARETAKING

Additionally, a detention may be reasonable—consistent with the Fourth Amendment—under law enforcement's community-caretaking function, which is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 99 S. Ct. 2523, 2528 (1973); *see also Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999); *Hernandez v. State*, 376 S.W.3d 863, 873–74 (Tex. App.—Fort Worth 2012, no pet.). This function may be invoked to justify a detention if (1) the officer was primarily and subjectively motivated by a community-caretaking purpose and (2) the officer's belief that the individual needed help was objectively reasonable. *Gonzales v. State*, 369 S.W.3d 851, 854–55 (Tex. Crim. App. 2012). The reasonableness of the officer's belief, in turn, is determined by considering (1) the nature and level of the distress exhibited by the individual, (2) the location of the individual, (3) whether or not the individual was alone or had access to assistance other than that offered by the officer, and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Id.* at 855.

## III. DISCUSSION

### A. COMMUNITY CARETAKING

Henderson testified that he stopped Dearmond to "check [his] welfare on the concern of [his] flat tires and offer any assistance." Indeed, he communicated to the dispatch officer that he was going to "assist a motorist with a flat tire." This testimony clearly shows that Henderson's primary motivation was community caretaking, as implicitly found by the trial court, which would justify the stop if his belief that Dearmond needed assistance was objectively reasonable.

Although Dearmond did not personally indicate to Henderson that he was in distress or needed help, a reasonable person would have believed that the driver of a car with two flat tires would need help. *See id.* at 856; *Lebron v. State*, 35 S.W.3d 774, 776 (Tex. App.—Texarkana 2001, pet. ref'd). The condition of Dearmond's car provided an indication that he was in distress. *Lollie v. State*, 465 S.W.3d 312, 316 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Henderson further testified that the residential area was deserted when he saw Dearmond, with only one other car in the street, and no other people in the area; thus, Dearmond was in an isolated location late at night that offered him few, alternative sources of help. *See Gonzales*, 369 S.W.3d at 856; *Lollie*, 465 S.W.3d at 317. Finally, the facts show that Dearmond was a danger to himself. Although there was only one other car on the road and no people in the

area, Dearmond's two flat tires presented a danger to his safety on the road. *See Lollie*, 465 S.W.3d at 318; *Lebron*, 35 S.W.3d at 777.

Based on the totality of the circumstances, the evidence supports the trial court's conclusion that Henderson subjectively believed he was acting in his community-caretaking function by initiating a stop of Dearmond's car. These facts further reveal that this subjective belief was objectively reasonable because there were sufficient indicia of distress at the time Henderson stopped Dearmond's car: Dearmond was in an isolated location with no ready access to help and presented a danger to himself. Thus, the stop was justified under the community-caretaking exception. *See Lollie*, 465 S.W.3d at 315–18; *Goains v. State*, No. 02-03-070-CR, 2004 WL 2712106, at *2–3 (Tex. App.—Fort Worth Nov. 24, 2004, no pet.) (mem. op., not designated for publication).

## B. REASONABLE SUSPICION[2]

The transportation code provides that a person commits an offense if he operates a vehicle that "is unsafe so as to endanger a person." Tex. Transp. Code Ann. § 547.004(a)(1) (West 2011). The trial court recognized in its findings that Henderson "believed driving on a flat tire to be unsafe because the driver of a vehicle with flat tires cannot properly control his vehicle," which "could be

---

[2]Although the community-caretaking function alone was sufficient to justify Henderson's initial detention of Dearmond even in the absence of reasonable suspicion, we address reasonable suspicion because the trial court entered a conclusion of law regarding reasonable suspicion and because Dearmond specifically attacks this conclusion in his brief.

8

unsafe for the driver of the vehicle and unsafe for other vehicles, pedestrians, and others in the area." Based on these findings of historical fact, the trial court concluded that Henderson had reasonable suspicion to stop and temporarily detain Dearmond because there were specific, articulable facts allowing Henderson to reasonably and objectively conclude that Dearmond was committing an offense, specifically that he was violating transportation code section 547.004.

Dearmond's driving his car with two flat tires met the elements of section 547.004. *See Kennedy v. State*, No. 13-12-00668-CR, 2014 WL 1266344, at *3 (Tex. App.—Corpus Christi Jan. 23, 2014, no pet.) (mem. op., not designated for publication). The facts as found by the trial court and supported by the evidence adduced at the hearing, which we defer to, revealed that driving on two flat tires was unsafe for the driver because such a car is difficult to control. As such, Dearmond was operating his car in an unsafe manner so as to endanger a person under section 547.004. The trial court correctly applied the law to the facts by concluding that Henderson had reasonable suspicion to initially stop Dearmond. *See Castillanos v. State*, Nos. 05-08-00155-CR, 05-08-00156-CR, 2009 WL 1637039, at *3–4 (Tex. App.—Dallas June 12, 2009, no pet.) (mem. op., not designated for publication); *Carrillo v. State*, 235 S.W.3d 353, 358 (Tex. App.—Texarkana 2007, pet. ref'd); *State v. Kloecker*, 939 S.W.2d 209, 210 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

## IV. CONCLUSION

Because the totality of the circumstances supported the trial court's conclusions that Henderson had reasonable suspicion to initially stop Dearmond and that the stop was justified under the community-caretaking function, we overrule Dearmond's issue and affirm the trial court's denial of Dearmond's motion to suppress.  *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  March 3, 2016