**Benito CARRILLO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–07–00019–CR.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 27, 2007.

Decided Sept. 5, 2007.

Larry Finstrom, Dallas, for appellant.

Tanya S. Dohoney, Charles M. Mallin, Asst. Dist. Atty's, Fort Worth, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## MEMORANDUM OPINION

Memorandum Opinion by Justice CARTER.

After the trial court denied his motion to suppress, Benito Carrillo pled guilty to charges of misdemeanor driving while intoxicated (DWI). *See* TEX. PENAL CODE ANN. §§ 49.01(2)(A), 49.04(a) (Vernon 2003) (a Class B misdemeanor). His ninety-day sentence was probated for two years, and he was fined $550.00. Carrillo now appeals the trial court's denial of his motion to suppress evidence gathered as a result of the traffic stop. He contends that the officer who stopped him failed to articulate facts which would justify the traffic stop and, therefore, the trial court erred by denying his motion to suppress. We will conclude to the contrary and overrule Carrillo's sole point of error.

## I. BACKGROUND

On the night of June 19, 2006, Officer David McCoy of the Grand Prairie Police Department was assisting an officer in the Arlington Police Department in the investigation of a possible intoxicated driver. As McCoy stood outside his patrol car during that traffic stop, he heard a noise approaching the scene. That noise, McCoy discovered, was made by Carrillo's vehicle being driven at about forty miles per hour on a very flat tire. As Carrillo passed the scene of the unrelated traffic stop, McCoy smelled the burning rubber from the severely damaged tire. Shortly after Carrillo passed, another officer came to assist in the investigation of the already detained driver, allowing McCoy to leave

that scene and try to catch up to Carrillo's car.

McCoy did catch up to the car and noticed that the driver was swerving within his lane and that Carrillo's car was "riding on [the] rim," causing sparks to fly out from the car. When McCoy activated his lights, Carrillo pulled over to the right, but abruptly maneuvered into the center turn lane where he pulled into a parking lot. When Carrillo pulled into the parking lot, what little remained of the tire came off the wheel and rolled into the parking lot.

Carrillo was arrested and charged with DWI. Carrillo filed a motion to suppress, contending McCoy was not justified in stopping him. The trial court denied Carrillo's motion, concluding McCoy was justified in stopping Carrillo based on reasonable suspicion of criminal activity. After the trial court denied his motion, Carrillo pled guilty to the charges and was placed on community supervision for two years.

## II. APPLICABLE LAW

### A. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor while reviewing de novo other applications-of-law-to-fact issues. *See Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002); *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000). Appellate courts should also afford nearly total deference to trial courts' rulings on application-of-law-to-fact questions, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Appellate courts may review de novo mixed

questions of law and fact not falling within this category. *Id.* We must affirm the decision if it is correct on any theory of law that finds support in the record. *Osbourn v. State,* 92 S.W.3d 531, 538 (Tex. Crim.App.2002).

## B. When a Stop is Justified

▆▆▆ Violation of a traffic law in an officer's presence is sufficient authority for an initial stop. *Armitage v. State,* 637 S.W.2d 936, 939 (Tex.Crim.App.1982); *Griffin v. State,* 54 S.W.3d 820, 822–23 (Tex.App.-Texarkana 2001, pet. ref'd). Generally, the decision to stop an automobile is reasonable when an officer has reasonable suspicion to believe that an individual is violating the law. *See Ford v. State,* 158 S.W.3d 488, 492–93 (Tex.Crim. App.2005); *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App.2002); *Coleman v. State,* 188 S.W.3d 708, 716 (Tex.App.-Tyler 2005, pet. ref'd), *cert. denied,* —— U.S. ——, 127 S.Ct. 502, 166 L.Ed.2d 376 (2006). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him or her to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Ford,* 158 S.W.3d at 492. This standard is an objective one that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.* at n. 11 (citing *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim.App.2001)); *see also Walter v. State,* 28 S.W.3d 538, 543 (Tex.Crim.App.2000) (relying on *Whren v. United States,* 517 U.S. 806, 810–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), to conclude that the traffic violation is the objectively reasonable basis for the stop and that any ulterior motive of the officer is irrelevant).

## C. Relevant Traffic Provisions

The Texas Transportation Code prohibits operation of an unsafe vehicle:

> (a) A person commits an offense that is a misdemeanor if the person operates or moves or, as an owner, knowingly permits another to operate or move, a vehicle that:
>
> (1) is unsafe so as to endanger a person;
>
> (2) is not equipped in a manner that complies with the vehicle equipment standards and requirements established by this chapter; or
>
> (3) is equipped in a manner prohibited by this chapter.

Tex. Transp. Code Ann. § 547.004(a) (Vernon 1999). The Code further provides:

> (a) A person commits an offense if the person operates or moves a motor vehicle, trailer, semitrailer, pole trailer, or mobile home, or a combination of those vehicles, that is:
>
> (1) equipped in violation of this chapter or a rule adopted under this chapter; or
>
> (2) in a mechanical condition that endangers a person, including the operator or an occupant, or property.

Tex. Transp. Code Ann. § 548.604(a) (Vernon 1999). Since Sections 547.004(a)(2) and 548.604(a)(1) refer to vehicle equipment, Section 547.612 is also implicated here:

> (a) A solid rubber tire used on a vehicle must have rubber on the traction surface that extends above the edge of the flange of the periphery.
>
> (b) A person may not operate or move a motor vehicle, trailer, or semitrailer that has a metal tire in contact with the roadway, unless:
>
> (1) the vehicle is a farm wagon or farm trailer that has a gross weight of less than 5,000 pounds; and

(2) the owner is transporting farm products to market, for processing, or from farm to farm.

TEX. TRANSP. CODE ANN. § 547.612 (Vernon 1999).

A "metal tire" includes a tire the surface of which in contact with the highway is wholly or partly made of metal or other hard, nonresilient material. TEX. TRANSP. CODE ANN. § 541.203(2) (Vernon 1999).

## III. ANALYSIS

In *Ford,* the Texas Court of Criminal Appeals evaluated the officer's testimony that, in his judgment, Ford had been following too closely in violation of the law. The *Ford* court held that such conclusory testimony, void of any facts that would support the officer's judgment, did not satisfy the State's burden of demonstrating reasonable suspicion. *Ford,* 158 S.W.3d at 494.

Similarly, in *Eichler v. State,* 117 S.W.3d 897 (Tex.App.-Houston [14th Dist.] 2003, no pet.), our sister court examined the record to determine whether the traffic stop was justified. The State contended that the traffic stop was reasonable because Eichler had violated Section 545.060(a) of the Texas Transportation Code which made it an offense to fail to maintain a single lane. *Id.* at 900. Section 545.060(a), however, required, inter alia, that the failure to maintain a single lane was unsafe. *See id.* When the State failed to elicit testimony that Eichler's failure to maintain a single lane of traffic was unsafe, the State failed to demonstrate that the officer had formed a reasonable suspicion that Eichler committed a traffic offense. *Id.*

We find the instant case on more similar footing to *State v. Kloecker,* 939 S.W.2d 209 (Tex.App.-Houston [1st Dist.] 1997, no pet.). In that case, Kloecker experienced a flat tire in the early morning hours. *Id.* Another motorist had flagged down a deputy, reporting Kloecker as a possible drunk driver. *Id.* When the deputy approached Kloecker's vehicle, the wheel was causing sparks as she continued to drive at five to ten miles per hour. *Id.* After the deputy signaled her to pull over, Kloecker stopped the vehicle in the middle of the road and then experienced difficulty in finding her license. *Id.* at 209–10. At the deputy's direction, Kloecker stepped out of the vehicle and stumbled as she did so. *Id.* at 210. The deputy also detected the odor of alcohol. *Id.*

At the suppression hearing, the deputy testified that he stopped Kloecker because he observed her driving on a tireless wheel and knew that doing so was a traffic offense. *Id.* The deputy specified that driving without a tire was "defective equipment, unsafe" and that driving the vehicle in such a condition endangered other persons on the road. *See id.* at 210. The court concluded that, since the deputy observed Kloecker committing a traffic offense, the record showed that the deputy was authorized to pull her over. *Id.*

Unlike the testimony of the officers in *Ford* and in *Eichler,* McCoy, the only witness at the suppression hearing, provided specific facts that permitted him to determine that Carrillo was violating a traffic law. The trial court also viewed the videotape from the point in time at which McCoy activated his lights. The evidence shows the vehicle was not equipped to comply with proper standards; that Carrillo was driving on a metal tire or a tire without rubber on the traction surface; such action constituted a traffic violation and presented a danger to Carrillo and other motorists.[1] McCoy testified that the

---

1. We recognize that a number of similar cases, especially those involving the operation

traffic was moderate on the street that night. McCoy specifically testified that driving forty miles per hour on what was essentially the bare wheel was not safe.

McCoy was not certain of the source of the law violated,[2] proposing that it might be a city ordinance against driving on a flat tire. McCoy was very clear, though, that he believed Carrillo was violating a traffic law by driving on such a deflated tire. His testimony concerning Carrillo's swerving down the moderately busy road at forty miles per hour as the wheel produced sparks are objective facts on which the trial court could conclude McCoy had reasonable suspicion Carrillo was violating any one of several applicable traffic laws. *See* Tex. Transp. Code Ann. §§ 547.004, 547.612, 548.604 (Vernon 1999).

Here, the State had the burden of proving that the traffic stop was reasonable. *See Ford*, 158 S.W.3d at 492. It carried its burden through McCoy's testimony concerning the condition of Carrillo's vehicle,

the effects that condition had on the operation of the vehicle, the speed at which he was driving, and the unsafe conditions it posed to Carrillo and the other motorists on the moderately busy street that night. We conclude the trial court properly denied Carrillo's motion to suppress. We overrule Carrillo's sole point of error.

We affirm the trial court's judgment.

---

of a vehicle with a flat tire, address the encounter with law enforcement in terms of the officer's community care-taking function. *See Lebron v. State*, 35 S.W.3d 774, 776–77 (Tex. App.-Texarkana 2001, pet. ref'd) (police officer reasonably exercised community care-taking function when the officer responded to a reported accident and discovered the defendant driving very slowly, eventually coming to a stop on the road, with two flat tires); *Sweeney v. State*, 6 S.W.3d 670, 671 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd) (when appellant was driving at over forty miles per hour, in the rain, at night, with a flat tire, officer had reason to stop the appellant, if not to assist him, then for the safety of others on the road); *Cunningham v. State*, 966 S.W.2d 811, 813 (Tex.App.-Beaumont 1998, no pet.) (when driver had flat tire, late at night, in unsafe neighborhood, and was driving at unsafe speed, community care-taking exception applied).

As part of an officer's duty to "serve and protect," an officer "may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help." *Corbin v. State*, 85

S.W.3d 272, 276 (Tex.Crim.App.2002) (quoting *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim.App.1999)). This community care-taking function, however, is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 276–77 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)). As a result, a police officer may not properly invoke his or her community care-taking function if the officer is primarily motivated by a noncommunity care-taking purpose. *See Corbin*, 85 S.W.3d at 277; *Wright*, 7 S.W.3d at 151. Here, McCoy did not testify that his primary motivation in stopping Carrillo was a community care-taking function.

**2.** Again, the reasonable suspicion standard is an objective one. *See Whren*, 517 U.S. at 812–13, 116 S.Ct. 1769, and cases cited therein. We need only determine whether the circumstances, viewed objectively, justify McCoy's actions, not whether he knew the precise provision violated.