

NUMBER 13-12-00668-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

AUDREY KENNEDY,                                        **Appellant,**

**v.**

THE STATE OF TEXAS,                                  **Appellee.**

## On appeal from the County Criminal Court No. 4
## of Denton County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

By one issue, appellant Audrey Kennedy contends that the trial court erred when it denied her motion to suppress by finding that the officer who arrested her had reasonable suspicion to effectuate a traffic stop when she drove a vehicle with a flat tire. We affirm.

# I. BACKGROUND[1]

On April 1, 2011, Corporal Pete Uranga was on night duty at the University of North Texas's (UNT's) campus in Denton, Texas. Corporal Uranga, a twelve-year veteran of UNT's police force, was patrolling Welch Street, a busy area of campus with several campus parking lots, apartment complexes, and businesses nearby.

At about 2:20 a.m., Corporal Uranga heard a noise and noticed that the sound came from a white, two-door passenger vehicle "being operated with a flat tire." He described the tire as having "absolutely no air"; he could "hear it flopping as it revolved around." Corporal Uranga observed the driver of the vehicle, Kennedy, continue to drive on the flat tire. She passed several gas stations and opportunities to make a safe stop, but did not do so. Although Kennedy was driving within the speed limit, did not swerve, and was not close to striking any other vehicle or object, Corporal Uranga initiated a traffic stop because Kennedy was driving with defective equipment in violation of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. §§ 547.004, 548.604 (West 2011). In Corporal Uranga's experience, driving on a flat tire was "unsafe" and compromised a vehicle's braking and turning functions. The loss of driving capability was a concern, especially in an area of campus that was "fairly heavily populated" with high pedestrian traffic. When the vehicle stopped, Corporal Uranga noticed that the tire was "smoking." Although the tire was still attached to the wheel, the seal had broken around the tire.

Corporal Uranga requested Kennedy's driver's license and vehicle registration

---

[1] This case is before this Court on transfer from the Second Court of Appeals in Fort Worth pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

and asked if she knew why she was being stopped. Kennedy responded that she assumed it was because of her flat tire; in fact, she had been on her cell phone with a friend to ask what a flat tire sounded like. While talking to Kennedy, Corporal Uranga detected a moderate odor of an alcoholic beverage coming from within the vehicle. He also noticed that Kennedy had bloodshot eyes and that her movements were slow and unusually deliberate. He reported that "as she attempted to find her license, [she] fumbled through her wallet and thumbed past her license several times before finding it." Upon further questioning, Kennedy admitted that she had recently consumed four glasses of Shiner Bock beer while at a friend's home. Corporal Uranga then had Kennedy exit her vehicle so that he could administer several standardized field sobriety tests, such as the horizontal gaze nystagmus, walk-and-turn, one-leg stand, and alphabet tests. When Kennedy failed these tests, Corporal Uranga arrested her for driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (West 2011). Later, a blood test revealed that Kennedy's blood-alcohol concentration was .21 grams of alcohol per 100 milliliters of blood—more than twice the legal limit.[2]

Kennedy filed a motion to suppress, arguing that the mere occurrence of a flat tire did not give Corporal Uranga reasonable suspicion to make the initial traffic stop. The trial court denied Kennedy's motion to suppress and issued findings of fact and conclusions of law to support its order. Kennedy subsequently pleaded guilty to driving while intoxicated, but received permission from the trial court to file this appeal.[3]

---

[2] According to the police report, Kennedy verbally consented to the blood draw.

[3] In a plea bargain case, a defendant may only appeal matters that were raised by written motion filed and ruled on before trial, or after getting the trial court's permission to appeal. *See* TEX. R. APP. P. 25.2(a)(2). Both occurred in this case.

3

## II. APPLICABLE LAW

### 1. Standard of Review

"In reviewing a trial court's ruling on a motion to suppress evidence and its determination of the reasonableness of either a temporary investigative detention or an arrest, appellate courts use a bifurcated standard of review." *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). Appellate courts must give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Id.* (quoting *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We must also defer to a trial court's ruling on "application of law to fact questions," or "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Id.* However, appellate courts review "mixed questions of law and fact" that do not depend upon credibility and demeanor by a *de novo* standard. *Id.*

### 2. Reasonable Suspicion

"An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (citing *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Id.* (citing *Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). "This is an objective standard that disregards any subjective intent

4

of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Id.* "A reasonable-suspicion determination is made by considering the totality of the circumstances." *Id.* at 492–93.

### 3. Texas Transportation Code

Section 547.004 of the Texas Transportation Code makes it a misdemeanor offense for a person to operate a vehicle that is unsafe so as to endanger a person or is not equipped in a manner that complies with the vehicle equipment standards. *See* TEX. TRANSP. CODE ANN. § 547.004. Further, section 548.604 makes it an offense for a person to operate a vehicle that is equipped in violation of the transportation code or in a mechanical condition that endangers a person, including the operator, an occupant, or property. *Id.* § 548.604. The State relied on these two statutory provisions when arguing that Corporal Uranga had reasonable suspicion to believe that Kennedy was violating the law. *See Ford*, 158 S.W.3d at 492.

### III. DISCUSSION

By one issue, Kennedy contends that the trial court erred when it denied her motion to suppress by finding that Corporal Uranga had reasonable suspicion to effectuate a traffic stop solely due to a flat tire. We disagree. Texas case law holds that an officer can make a traffic stop if the officer has reasonable suspicion to believe that an individual is violating a law. *See Ford*, 158 S.W.3d at 492. Here, the State alleged that Kennedy's continued use of a vehicle with a flat tire violated two misdemeanor statutes of the Texas Transportation Code: section 547.004, which makes it a crime to operate a vehicle that can endanger a person or does not comply with vehicle equipment standards; and section 548.604, concerning the operation of a

5

vehicle in a mechanical state that can endanger other persons. *See* TEX. TRANSP. CODE ANN. §§ 547.004, 548.604. Kennedy's flat tire met the elements of both of these statutes.

Our court is not alone in this conclusion. Other appellate courts have ruled that driving with a flat tire can warrant a traffic stop. *See Carrillo v. State*, 235 S.W.3d 353, 358 (Tex. App.—Texarkana 2007, pet. ref'd) (holding that a traffic stop for a flat tire was justified when the arresting officer smelled burning rubber, witnessed the car swerve, and saw sparks fly from the rim); *State v. Kloecker,* 939 S.W.2d 209, 211 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (reversing the granting of a motion to suppress when the driver was stopped for driving at a low rate of speed and without a tire). Although Kennedy attempts to distinguish these cases in her brief, focusing on the fact that she was driving within the speed limit, not swerving, and not in danger of striking anything, we find her arguments unpersuasive. Kennedy was driving in a busy section of the UNT campus which had pedestrian traffic. Corporal Uranga heard the tire flapping and witnessed the seal broken from the wheel and smoke coming from the tire. In Corporal Uranga's twelve-year experience as a peace officer, he surmised that this flat tire could present a danger because it could compromise the vehicle's turning and braking capabilities in this populated area. We hold that all of these observations constitute "specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude" that Kennedy was violating the transportation code. *Ford*, 158 S.W.3d at 492. Thus, under the totality of the circumstances, Corporal Uranga had an objective basis to make this traffic stop. *Id.*

6

In light of the foregoing, we overrule Kennedy's sole issue.[4]

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
23rd day of January, 2014.

---

[4] Because we hold that Corporal Uranga's stop was reasonable under the Texas Transportation Code, we need not address the State's argument that Corporal Uranga's stop was also reasonable under a peace officer's "community caretaking" function. *See* TEX. R. APP. P. 47.1 ("the court of appeals must hand down an written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").