**Opinion filed October 27, 2016**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-14-00366-CR & 11-14-00367-CR

_____

## WILLIAM JAMAR DAY, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause Nos. 18743B & 19086B**

## M E M O R A N D U M   O P I N I O N

We are concerned here with two of the charges contained in two multi-count indictments against William Jamar Day. In count one of the first indictment, trial court cause no. 18743B (our Cause No. 11-14-00366-CR), the State charged that Appellant, on July 27, 2012, possessed four grams or more but less than 200 grams of methamphetamine with the intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2010). The indictment contained three other counts that are not involved in this appeal. In count one of the second indictment, trial court cause no. 19086B (our Cause No. 11-14-00367-CR), the State charged that

Appellant, on September 13, 2012, possessed four grams or more but less than 200 grams of methamphetamine with the intent to deliver.

Appellant filed motions to suppress in both cases. However, there was never a ruling in connection with the evidence seized in the July case, and there is no complaint on appeal as to the July seizure. The trial court heard and denied the motion to suppress the evidence obtained in connection with the September 13, 2012 offense.

After the trial court denied the motion to suppress, it consolidated the cases for trial. Appellant pleaded guilty to count one of each indictment and elected to have the jury assess his punishment. The jury assessed Appellant's punishment for each offense at confinement for twenty years, and the trial court ordered that the sentences are to run concurrently. We affirm.

On September 13, 2012, Agents Wayne Cockerham and Gary Kalmus, both of whom worked in the narcotics division of the Taylor County Sheriff's Office, began their day by checking "Odyssey" for names and photographs of people who were shown to have outstanding arrest warrants. "Odyssey" is a computer system that reflects information supplied by personnel in the district clerk's office and by warrant secretaries at the sheriff's office. A red "W" shown by a person's name in the Odyssey system indicates that there is an outstanding arrest warrant for that person. When the agents checked Odyssey on the morning of the September offense, a red "W" appeared by Appellant's name. As a result, Agents Cockerham and Kalmus believed that there was an outstanding arrest warrant for Appellant.

Later that same day, while Agents Cockerham and Kalmus were getting gas, Agent Cockerham noticed that Appellant was in the passenger seat of a vehicle that was entering that same gas station. He immediately recognized Appellant as the person who had the red "W" by his name in the Odyssey system.

Armed with the information from Odyssey, Agents Cockerham and Kalmus approached the vehicle, displayed their badges, informed Appellant that they had a warrant for his arrest, and asked him to exit the vehicle. When Appellant opened the passenger door in response, the agents saw a bag of marihuana "on the trim where you shut the door at"; the bag of marihuana was not visible to the agents until the passenger door was opened. Agents Cockerham and Kalmus then searched the vehicle and found several items of contraband, including methamphetamine. Appellant took full responsibility for the methamphetamine and ultimately pleaded guilty to possession of the methamphetamine with intent to deliver.

It is the September search and seizure to which Appellant takes exception in his sole issue on appeal in Cause No. 11-14-00367-CR. He frames that issue as follows: "The trial court erred in denying Appellant's motion to suppress on the basis of the plain-view doctrine[] because the agents did not have a right to be in their vantage point at the time they saw contraband in plain view."

That same September search is also the basis for Appellant's sole issue in Cause No. 11-14-00366-CR. He couches that issue in this manner: "The trial court erred by admitting evidence at the punishment hearing that was obtained in violation of the Fourth Amendment, and it cannot be determined beyond a reasonable doubt that the error did not contribute to the punishment."

We will answer both of the issues in a single opinion. We do so because the essence of Appellant's position is that the trial court should have excluded the evidence obtained in the September seizure and that, because these cases were tried together, the inadmissible evidence impermissibly tainted both cases. In Cause No. 11-14-00366-CR, Appellant asks us to reverse for a new punishment hearing. Appellant seeks a new trial in Cause No. 11-14-00367-CR.

The trial court issued findings of fact and conclusions of law. In its findings, the trial court found that, although the agents thought that they were initiating an arrest pursuant to a warrant, "their actions to that point were consistent with a detention. To that point in time, this was a detention. This was a reasonable detention." The trial court additionally found that the agents observed contraband (the marihuana) in plain view "[i]mmediately after the beginning of the detention." The agents then, reasoned the trial court, had probable cause to arrest Appellant for possession of illegal drugs and, therefore, had "legal authority to search [Appellant] incident to the arrest."

We review a trial court's ruling on a motion to suppress for an abuse of discretion, applying a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The bifurcated standard requires that we give great deference to the trial court's findings of historical facts supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Herrera v. State*, 241 S.W.3d 520, 526–27 (Tex. Crim. App. 2007).

However, we review de novo the trial court's determination of the law and its application of law to facts that do not turn on an evaluation of credibility and demeanor. *Id.* at 527; *Davila v. State*, 4 S.W.3d 844, 847–48 (Tex. App.—Eastland 1999, no pet.). We view the evidence in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). If the trial court makes express findings of fact, as it did in this case, we review the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports these factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). An appellate court may affirm, as opposed to reverse, a trial court's decision on legal theories not presented to the trial court. *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002); *Calloway v. State*, 743 S.W.2d 645, 651–52

4

(Tex. Crim. App. 1988). We must affirm a ruling when it is correct on any legal theory that finds support in the record. *Carrillo v. State*, 235 S.W.3d 353, 356 (Tex. App.—Texarkana 2007, pet. ref'd).

We note that, on appeal, Appellant makes no claim that the State violated Article I, section 9 of the Texas constitution, nor does he argue that the evidence was inadmissible under Article 38.23 of the Texas Code of Criminal Procedure, the Texas statutory exclusionary rule. He bases his arguments before this court solely on the Fourth Amendment and the federal exclusionary rule.

Before we address Appellant's complaints on appeal, we point out that the State claims that Appellant does not have standing to question the search of the vehicle. But Appellant's complaint is first directed not at the search of the vehicle, but at the applicability of the plain view doctrine that gave rise to the search of the vehicle. It is important to identify the conduct complained of because the particular conduct might well guide a decision on the standing issue. *See Kothe v. State*, 152 S.W.3d 54, 60–62 (Tex. Crim. App. 2004). In other words, if the conduct of the agents prior to the search of the vehicle violated Appellant's Fourth Amendment rights, then Appellant has standing to challenge any evidence that arises from the exploitation of that violation. *Id.* at 62. For that reason, we will first review the claimed violation and allow our decision in that regard to inform our decision on the standing issue.

We will first discuss the State's argument that the evidence was admissible under the plain view doctrine. The Fourth Amendment provides individuals "[t]he right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "The purpose of . . . the Fourth Amendment . . . is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions." *Rogers v. State*, 113 S.W.3d

452, 456–57 (Tex. App.—San Antonio 2003, no pet.) (citing *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996)). "[A] search conducted without a warrant issued upon probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (alteration in original) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception is directed at the seizure of contraband that is located in plain view; such a seizure does not violate the Fourth Amendment because the "seizure of property in plain view involves no invasion of privacy and is presumptively reasonable." *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000).

The plain view doctrine provides that, when an officer has a right to be in the location where an item is in plain view and the item is inadvertently discovered and leads police to have an immediate apparent belief that the item is evidence of a crime, contraband, or otherwise subject to seizure, the officer's seizure of the item does not involve an invasion of privacy under the Fourth Amendment. *Id.* at 541; *see Horton v. California*, 496 U.S. 128, 133 (1990) ("If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy."). When we determine whether an officer had a right to be in a particular location, we consider whether the officer violated the Fourth Amendment in arriving at the location from which the officer could plainly view the evidence. *Horton*, 496 U.S. at 136.

There is no disagreement that the marihuana was immediately incriminating upon observation. However, the question here is whether Agents Cockerham and Kalmus had a right to be where they were when they observed the marihuana.

As we have noted, the record shows that, prior to the encounter between the agents and Appellant, there was an outstanding warrant for Appellant's arrest

according to information contained in the Odyssey system. The record also shows that, unbeknownst to the agents, although it remained in the Odyssey system, the warrant was no longer valid at the time of the encounter; it had been recalled. There is no evidence in the record to show that either Agent Cockerham or Agent Kalmus had actual knowledge that the warrant had been recalled.

Again, because Appellant has made no claims under the state constitution or challenged the admissibility of the evidence under the Texas exclusionary rule, we will confine our review to the Fourth Amendment and to the application of the federal exclusionary rule. The federal exclusionary rule is judicially created and operates to exclude evidence obtained in violation of the Fourth Amendment. *State v. Anderson*, 445 S.W.3d 895, 912 (Tex. App.—Beaumont 2014, no pet.). There is no transgression against the Fourth Amendment when officers objectively and reasonably conduct a search in good faith reliance upon a warrant that is later determined to be improperly issued. *Id.* The purpose of the exception is to deter future Fourth Amendment violations by the police. *Davis v. United States*, 564 U.S. 229, 236–37 (2011). If law enforcement personnel act in an objectively reasonable manner in the good faith belief that their conduct is lawful, any deterrent value in the exclusion of evidence is diminished. *Id.* at 238. The federal exclusionary rule does not operate to exclude evidence obtained when police objectively and reasonably rely on erroneous arrest warrant information contained in a database maintained by court employees. *Arizona v. Evans*, 514 U.S. 1, 14 (1995). In a case that involved a recalled warrant, the Supreme Court held that the same reasoning applies when police employees maintained the database. *Herring v. United States*, 555 U.S. 135, 137 (2009).

Here, the record shows that the agents were acting in good faith when they recognized Appellant and confronted him with what they believed to be a valid,

outstanding warrant for his arrest. Furthermore, the record shows that the agents acted objectively and reasonably and in good faith reliance on the information that they had received from the Odyssey system—information that had been put into the Odyssey system by court clerks and warrant secretaries.

Whether we consider the encounter with Appellant to be a temporary detention or an arrest, the result is the same. We hold that the agents had the right to be in the place where they were when they saw the marihuana in plain view and, upon seeing it, had probable cause to search the vehicle in which Appellant was riding. *See Barnes v. State*, 424 S.W.3d 218, 225 (Tex. App.—Amarillo, 2014, no pet.) (contraband found in plain view in vehicle can supply probable cause to search that vehicle). Although Appellant had standing to attack the initial conduct of the police, that conduct passes federal constitutional muster because there was no infringement of his Fourth Amendment rights, and the evidence found in the subsequent search of the vehicle was not discovered by exploitation of illegal police activity. Appellant did not, because of any exploitation of illegalities associated with the initial contact, have standing to complain about the search of the vehicle that resulted in the discovery of the methamphetamine. There has been no argument that standing exists for any other reason.

We hold that Appellant had standing to challenge the initial contact with the agents and the discovery of the marihuana in connection with that contact. We further hold that, upon the record presented to us, Appellant did not have standing to challenge the subsequent search of the vehicle.

Even if Appellant, as a passenger in the vehicle, had standing to object to the vehicle search, we could not say that the trial court abused its discretion when it denied Appellant's motion to suppress. As we have held, the agents were where they had a right to be when they saw the marihuana in plain view. Probable cause

8

then existed to search the vehicle. The search was not the result of the exploitation of Appellant's Fourth Amendment rights. We need not discuss the other theories of admissibility advanced by the State. We overrule Appellant's sole issue in each appeal.

The judgments of the trial court are affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


October 27, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.