

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00091-CR

MICHAEL FRED HOUSTON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 46857-B

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

A Gregg County jury found Michael Fred Houston guilty of aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03. After it found the State's punishment enhancement allegations true, the jury assessed Houston a sentence of life imprisonment. In his sole point of error on appeal, Houston argues that the trial court erred in overruling his motion to suppress because an impermissibly suggestive pretrial identification procedure should have barred the victim's in-court identification of Houston as the perpetrator.

We conclude that the trial court did not abuse its discretion in finding that the impermissibly suggestive pretrial identification procedure did not give rise to a substantial likelihood of irreparable misidentification by the victim of the crime. As a result, we overrule Houston's sole point of error.

## I.    Factual and Procedural Background

The Longview Police Department (LPD) dispatched officer Fernando Nino to the scene of an aggravated robbery conducted in daylight at a local Dollar General store. Nino spoke with the victim, Eleanor Joyce Brown, to obtain details about the crime. Brown told Nino that the perpetrator exited a black Chrysler, opened Brown's vehicle's door, and grabbed her purse. Brown said that the man pointed a gun at her and instructed her several times to hand over her cell phone, which was already in her purse. According to Nino, the only description of the man was that he was African American. As a result, LPD focused on the description of the perpetrator's vehicle.

Christopher Byrdsong, another LPD officer, testified that dispatchers told him to be on the lookout for a black Chrysler passenger car. Byrdsong believed he had located the suspect's vehicle

2

and initiated a traffic stop of the car. According to Byrdsong, while the car was only occupied by Houston's wife and four small children, it was registered to Houston. Byrdsong located a photograph of Houston and asked Nino to show it to Brown to see if she recognized him as the perpetrator.

Nino showed the photograph to Brown, who identified Houston as the robber. The single photograph of Houston was not part of a line-up, and Nino admitted that showing Brown only one suspect violated LPD policy. Although the photograph of Houston showed him with face tattoos and gold teeth, Brown never told Nino that the perpetrator had those features.

Several days after the robbery, LPD Detective Armando Juarezortega questioned Brown again on her description of the perpetrator. Juarezortega testified that Brown had about ten to twelve seconds to identify the suspect, which was as an "[e]xtremely short" amount of time. Juarezortega said that, after Brown had seen Houston's photograph, she added details to her description, including that the perpetrator was wearing a white t-shirt and had short hair, a slim build, and no facial hair. Although the photo of Houston depicted him with face tattoos and gold teeth, Brown told Juarezortega that the perpetrator did not have facial tattoos, and she never mentioned gold teeth. Brown also said that the perpetrator was in his early to mid-twenties, but Houston was thirty-six at the time of the offense. Brown provided a detailed description of the items in her purse and the handgun carried by the robber.

Houston moved to suppress evidence of Brown's pretrial identification, as well as her in-court identification, because LPD's use of a single photograph of Houston was impermissibly suggestive. At the suppression hearing, the State conceded that the use of a single photograph was

3

improper and agreed not to use evidence of Brown's pretrial identification of Houston.[1] As a result, the suppression motion addressed only the issue of whether Brown would be allowed to make an in-court identification of the robber.

Brown, who was eighty-five at the time of the suppression hearing, identified Houston as the perpetrator. She testified that Houston pulled his vehicle close to the passenger side of her car while she was parked at the Dollar General. Brown said she made eye contact with Houston as she put her purse in the passenger seat because she believed Houston was going to tell her that he had bumped her car. Instead, Houston opened the passenger side door, grabbed Brown's purse, pushed a gun in her face, and told her to give him her cell phone. Brown testified that she never looked away from Houston. Brown said Houston took the purse, closed her door, and kept pointing the gun at her through the window as he left in a black, four-door sedan.

Brown testified that she identified Houston as the perpetrator when Nino showed her Houston's photograph. Yet, Brown said she was thinking about the event in making her in-court identification, not the photograph. Brown added that she did not even remember what the photograph looked like and maintained that she did not notice any gold teeth or tattoos on Houston.[2] In sum, Brown testified that viewing Houston's photograph did not influence her identification of Houston as the robber. She explained, "[W]hen someone points a gun at you, you remember that face."

---

[1]*See Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993) (finding the use of only one photograph during a pretrial identification impermissibly suggestive), *overruled on other grounds by Ex parte Moreno*, 245 S.W.3d 419, 425 (Tex. Crim. App. 2008).

[2]During closing, the trial court commented, "You can't see any of the tattoos [on Houston]."

4

After the suppression hearing, the trial court found that showing one photo of Houston to Brown was impermissibly suggestive. Even so, it concluded that Brown's in-court identification was not based on the photograph, but on her "opportunity to view [Houston] and her own independent recollection." As a result, it denied Houston's motion to suppress Brown's in-court identification.

At trial, Brown identified Houston as the person who robbed her. During cross-examination, Houston attempted to impugn Brown's in-court identification by questioning Nino and Juarezortega about the impermissibly suggestive pretrial identification procedure. Houston established that Brown only identified him after Nino showed him the single photograph and that her only description of the perpetrator before she viewed the photo was that he was an African-American male. During re-direct examination, Nino testified that Brown "was certain" she was robbed by Houston after seeing his photograph.

Besides Brown's in-court identification, significant other evidence at trial established Houston as the perpetrator. Brown's purse and cell phone were found on the roof of Building 8 of the Parkway Gardens Apartments. Joe Trevino, an employee of the apartment complex, testified that Houston lived in Building 8. Kirby DeLoach, a detective with LPD, testified that two fingerprints found on Brown's interior passenger-side window, two fingerprints from her cell phone, and a fingerprint from her insurance card all matched Houston's known fingerprints. Clare Moyers, a forensic DNA analyst, compared DNA recovered from a buccal swab of Houston to swabs of Brown's purse. Moyers testified that

5

> for the swabs of the strap from the victim's purse, the DNA profile that was obtained was interpreted as a mixture of four individuals. Obtaining this mixture profile is 943 billion times more likely that the DNA came from Michael Houston and three unknown individuals, than if the DNA came from four unrelated, unknown individuals.
>
> And based on this likelihood ratio, Michael Houston cannot be excluded as a possible contributor to the profile.

Houston's wife testified that Houston had taken the vehicle during the time of the robbery. After hearing the evidence, the jury convicted Houston.

## II. Applicable Law

### A. Motion to Suppress Standard of Review

We must affirm the trial court's ruling on a suppression issue "if it is correct on any theory of law that finds support in the record." *Carrillo v. State*, 235 S.W.3d 353, 355 (Tex. App.—Texarkana 2007, pet. ref'd) (citing *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002)). This is because "[a] trial court's ruling on a motion to suppress is reviewed for abuse of discretion." *Kelly v. State*, 529 S.W.3d 504, 508 (Tex. App.—Texarkana 2017, no pet.) (citing *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999)). "In performing this review, we apply 'a bifurcated standard of review.'" *Id.* (quoting *Myrick v. State*, 412 S.W.3d 60, 63 (Tex. App.—Texarkana 2013, no pet.)).

We give "almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor while reviewing de novo other application-of-law-to-fact issues." *Carrillo*, 235 S.W.3d at 355 (citing *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)). We "also afford nearly total deference to trial court's rulings on application-of-law-to-fact questions, also known as mixed

questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id*. (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We "review de novo mixed questions of law and fact not falling within this category." *Id*. (citing *Guzman*, 955 S.W.2d at 89).

**B.     Law Related to In-Court Identification After Impermissibly Suggestive Pretrial Identification Procedures**

"We have previously held that '[a] pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law.'" *Kelly*, 529 S.W.3d at 511 (alteration in original) (quoting *Jones v. State*, 944 S.W.2d 50, 51 (Tex. App.—Texarkana 1997, pet. ref'd) (citing *Stovall v. Denno*, 388 U.S. 293, 294 (1967), *abrogated on other grounds by Griffith v. Kentucky*, 479 U.S. 314, 326 (1987)). "[D]etermining the admissibility of an in-court identification involves a two-step analysis:  (1) whether the out-of-court identification procedure was impermissibly suggestive, and (2) whether the suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification." *Id.* (quoting *Mayfield v. State*, 152 S.W.3d 829, 831 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Simmons v. United States*, 390 U.S. 377 (1968)).

"The defendant has the burden to establish by clear and convincing evidence that the pretrial procedure was impermissibly suggestive." *Balderas v. State*, 517 S.W.3d 756, 792 (Tex. Crim. App. 2016). Here, the trial court ruled that LPD's use of only Houston's photograph during the pretrial identification process was impermissibly suggestive, but "an unnecessarily suggestive

7

pretrial identification procedure does not, in itself, intrude upon a constitutionally protected interest." *Id.* Instead, the trial court moves to the second step in the analysis. *Id.*

The trial court "assesses the reliability of the identification under the totality of the circumstances . . . by weighing five non-exclusive factors against the corrupting effect of any suggestive identification procedure." *Id.* (footnote omitted) (citation omitted). These factors include

> (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Id.* (referring to these factors, established by *Neil v. Biggers*, 409 U.S. 188, 199 (1972), as the "*Biggers* factors"). In reviewing the trial court's assessment of reliability on appeal, "we consider these factors, which are issues of historical fact, deferentially in a light favorable to the trial court's ruling." *Id.* "We then weigh them *de novo* against any 'corrupting effect' of the suggestive pretrial identification procedure." *Id.* (citing *Loserth v. State*, 963 S.W.2d 770, 773–74 (Tex. Crim. App. 1998)).

Typically, we "only consider the evidence before the trial court at the time of its ruling on the motion to suppress." *Oringderff v. State*, 528 S.W.3d 582, 585 (Tex. App.—Texarkana 2017, no pet.). But, where the admissibility of an in-court identification is concerned, "[w]e review the evidence adduced at the admissibility hearing as well as the evidence adduced at trial." *Balderas*, 517 S.W.3d at 792 (citing *Webb v. State*, 760 S.W.2d 263, 273 (Tex. Crim. App. 1988)). In *Webb*, the Texas Court of Criminal Appeals explained,

8

In *Hardesty v. State*, 667 S.W.2d 130, at 133, n.6 (Tex. Crim. App. 1984), we observed that "where the ground of error complains of the admission of evidence at trial, and the issue has been consensually relitigated by the parties during the trial on the merits, consideration of relevant trial testimony is appropriate." It is true appellant "relitigated" facts surrounding the pretrial identification procedure only in context of trying to impugn the weight the jury should accord [the victim's] identification of appellant at trial, and was not attempting specifically to retry the legal question of its admissibility, *vel non*, as a function of due process analysis. To hold that appellate review is limited to facts adduced at the pretrial hearing under circumstances such as these, however, could place the appellate court in the untenable position of having to reverse a conviction in the face of a record which supports, albeit belatedly, the trial court's ruling. In scrutinizing trial determinations of admissibility of identification testimony, this Court has not so limited its review. *See, e.g.*, *Jackson v. State*, 657 S.W.2d 123 (Tex. Crim. App. 1983).

*Webb v. State*, 760 S.W.2d 263, 272 n.13 (Tex. Crim. App. 1988). Because the trial transcript showed that Houston relitigated facts surrounding the pretrial identification procedure to impugn Brown's in-court identification, our analysis is not limited to the evidence presented at the suppression hearing.

## III.    The Trial Court Did Not Abuse Its Discretion In Denying the Suppression Motion

We begin with a deferential review of the trial court's findings on the *Biggers* factors. First, the trial court found that Brown "obviously had an opportunity" to view the suspect at the time of the crime. The trial court determined that the ten- to twelve-second encounter was long enough to identify Houston because the crime occurred in daylight and Brown maintained good eye contact with him throughout the encounter.

Second, the trial court found that Brown maintained a good degree of attention. She testified that she was focused on Houston, even as he left her vehicle. Brown also described the criminal event in detail in the same manner several times, provided a good description of the car

9

and gun used to commit the crime, and remembered the words used by Houston during the encounter. The level of detail used by Brown in describing the incident showed her heightened level of awareness. *See Delk*, 855 S.W.2d at 707.

Third, before Nino's use of Houston's photograph, Brown had only described the robber as an African-American male. The prior description, while insufficient, was not inaccurate. Even so, Brown described Houston's car in sufficient detail for officer Byrdsong to locate it shortly after the crime. Her ability to recall details and unwillingness to waiver from her testimony that the robber did not have tattoos or gold teeth as depicted in the photograph lent credibility to her testimony that she did not rely on the photograph in identifying Houston, but instead relied on her memory of the event.

As for the last two *Biggers* factors, Brown's first interview with Nino occurred at the scene, shortly after the crime, when the incident was fresh in Brown's memory. Brown provided details of the encounter to Nino before Nino showed her the photograph. The trial court found a high level of certainty demonstrated by Brown during her identification. The court noted that Brown was not relying on the photograph and that she testified, "When somebody points a gun at you, you remember that face."

From the totality of this evidence, the trial court could reasonably conclude that Brown's testimony "was reliable despite the unnecessarily suggestive pretrial occurrence." *Id.* at 707–08. Brown said the photograph did not influence her in-court identification, which was based on her memory of the criminal event. Although the photograph showed that Houston had face tattoos and gold teeth, Brown was consistent in not including those features when describing the

10

perpetrator. Moreover, the evidence at trial showed that Houston's fingerprints were found inside Brown's vehicle, on her recovered cell phone, and on her insurance card, which was located inside her purse, which also contained Houston's DNA. This evidence minimized the corrupting effect of the suggestive pretrial identification procedure by showing that Brown's in-court identification was reliable. In other words, even though the pretrial identification was impermissibly suggestive, Brown's testimony showed that her "prior observations were sufficient to serve as an independent origin for the in-court identification." *Kelly*, 529 S.W.3d at 512 (quoting *Jones*, 944 S.W.2d at 52); *see Mayfield v. State*, 152 S.W.3d 829, 832 (Tex. App.—Texarkana 2005, pet. ref'd).

We find no abuse of discretion in the trial court's finding that Houston failed to show by clear and convincing evidence that the in-court identification was unreliable. *See Delk*, 855 S.W.2d at. at 707. As a result, we overrule Houston's sole point of error.

## IV.    Conclusion

We affirm the trial court's judgment.


Scott E. Stevens
Justice

Date Submitted:    December 27, 2019
Date Decided:    January 10, 2020

Do Not Publish

11