**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00262-CR**
_____

**MEGAN BARRETT JEFFERIES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1**
**Montgomery County, Texas**
**Trial Cause No. 16-316420**

**MEMORANDUM OPINION**

Megan Barrett Jefferies pled guilty to the misdemeanor offense of Driving While Intoxicated (DWI) and was sentenced to three days in the Montgomery County jail with a fine of $1200.00. *See* Tex. Penal Code Ann. § 49.04(a), (b) (West Supp. 2018).[1] In her sole issue on appeal, Jefferies complains that the trial court erred when it denied her pretrial motion to suppress evidence, arguing that her

---

[1] We cite the current version of the Penal Code as any subsequent amendments do not affect the outcome of Jefferies's appeal.

1

warrantless detention and arrest by the responding officer was not based on reasonable suspicion or probable cause and therefore was illegal. *See* U.S. CONST. amend. IV; Tex. Const. art. I, § 9. We affirm.

## Background

At the hearing on Jefferies's motion to suppress, Deputy Stephanie Lee of the Montgomery County Sheriff's Office was the sole witness called to testify regarding the events leading to Jefferies's arrest. Lee testified that on the night of August 19, 2016, her department received a 911 call regarding a possible intoxicated female in the drive-through lane of a Taco Bell in Montgomery County. Lee stated she was told by the 911 dispatcher that a woman in the drive-through lane was passed out in her vehicle holding up the line. The woman, who believed she was at Whataburger, was trying to order food from the Whataburger menu and kept exiting her vehicle to vomit. Upon arrival, Lee parked her cruiser and began to enter the Taco Bell when she was immediately directed to the drive-through line by the employees inside the restaurant. She acknowledged that she did not otherwise speak to any of the employees inside the Taco Bell before she approached Jefferies's car in the drive-through line. Lee testified that upon exiting the Taco Bell, she drove her police cruiser to the front of the restaurant, then exited her car and approached a small, tan SUV in the Taco Bell drive-through lane. She observed that the car was running,

2

Jefferies was alone, seated in the driver's seat, and there was vomit on the ground outside of the vehicle. Lee stated that when she approached the vehicle, she noticed that Jefferies's face appeared flushed, she had bloodshot eyes, and she smelled alcohol. Surveillance photographs admitted at the hearing show Lee standing by the driver's side of the vehicle and Jefferies seated in the driver's seat.

During cross examination, Lee acknowledged that the initial call placed to 911 had been classified as a welfare check. She confirmed the sheriff's department does not have a code for the investigation of a "reasonable suspicion of a DWI," and that for coding purposes, a welfare check is a code commonly used for DWIs. Lee testified that she was told by a 911 dispatcher before arriving at the Taco Bell that there was a possible intoxicated female in the drive-through lane of the restaurant, and when she approached Jefferies's vehicle, she was investigating a DWI. She believed she had probable cause to approach and investigate Jefferies because of the information provided by the caller to the 911 dispatcher that "[the driver] was intoxicated…believed she was at Whataburger – and [was] passing out behind the wheel." Lee admitted that she did not witness Jefferies vomit in the drive-through lane and that the Taco Bell employees did not tell her after she arrived that Jefferies was exhibiting signs of intoxication. Subsequently, Jefferies was arrested and charged with DWI. *See* Tex. Penal Code Ann. § 49.04(a), (b). Jefferies filed a pretrial

3

motion to suppress, arguing that police lacked reasonable suspicion to conduct a warrantless detention and arrest. After a contested hearing, the trial court denied Jefferies motion to suppress. She then pled guilty to DWI and timely filed her appeal.

**Standard of Review**

We use a bifurcated standard of review when reviewing a trial court's ruling on a motion to suppress. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)). Under that standard, we "must give 'almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.'" *Id.* (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Likewise, if the trial court resolves a motion to suppress based on a resolution of mixed questions of law and fact, its evaluation of the credibility and demeanor of the witnesses is given almost total deference. *Id*. (citing *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)). In contrast, if the trial court's findings do not depend on the trial court's evaluations of the credibility and demeanor of the witnesses or turned on resolving a pure question of law, we review its ruling using a *de novo* standard. *Id.* (citing *Montanez*, 195 S.W.3d at 107); *Guzman*, 955 S.W.2d at 89 (citation omitted).

The record before us reveals that Jefferies did not ask the trial court to prepare written findings and conclusions explaining its ruling on her motion to suppress. Because there are no written findings in the record, we "impl[y] the necessary fact findings that would support the trial court's ruling if the evidence (viewed in the light most favorable to the trial court's ruling) supports these implied fact findings." *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006); *accord State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000)).

**Analysis**

In her single issue on appeal, Jefferies argues that Lee lacked reasonable suspicion to detain and ultimately arrest her because her information was based "on a conclusory statement from dispatch – that a suspect is possibly DWI at [the] drive-through window[,]" which is insufficient information to establish reasonable suspicion. Jefferies argues that because Lee had nothing more than "an unsubstantiated hunch of criminal activity" to establish that she was intoxicated, she was illegally detained and arrested.

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (citing *O'Hara v. State*, 27 S.W.3d 548, 550 (Tex. Crim.

App. 2000)). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986)). "A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant." *Ford*, 158 S.W.3d at 492 (citation omitted). Once the defendant has made this showing, the burden then shifts to the State to prove that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id*. The State stipulated this case involved a warrantless stop and arrest. Therefore, the State had the burden to establish the reasonableness of the stop. *See id*.

A detention may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968) (citations omitted); *Carmouche*, 10 S.W.3d at 328 (citations omitted). "An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law." *Ford*, 158 S.W.3d at 492 (citing *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to

reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). In determining whether an officer's suspicion was reasonable, we employ an objective standard, asking whether the facts available to the officer at the moment of the detention warrant a person of reasonable caution to believe that the action taken was appropriate. *Terry*, 392 U.S. at 21–22 (citations omitted); *Aviles v. State*, 23 S.W.3d 74, 77 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (citations omitted). We disregard the actual, subjective intent of the detaining officer and look, instead, to whether an objective basis for the stop exists. *Ford*, 158 S.W.3d at 492 (citing *Garcia*, 43 S.W.3d at 530). In determining whether the officer had a reasonable suspicion for initiating the stop, we consider the totality of the circumstances. *Id*. at 492–93. "[T]he detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, 'the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists.'" *Derichsweiler v. State,* 348 S.W.3d 906, 914 (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)) (additional citations omitted). Moreover, "[a] 911 police dispatcher is

7

ordinarily regarded as a 'cooperating officer' for purposes of making this determination." *Id.* (citations omitted).

The United States Supreme Court has held that the justification for reasonable suspicion must be viewed in light of the "'content of information possessed by police and its degree of reliability.'" *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause[.]" *Id*. (quoting *Terry*, 392 U.S at 27; *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

In *Navarette*, the Court held that a 911 caller's use of the 911 emergency system, coupled with a detailed description of the "alleged dangerous driving[,]" including specific details of the actions of the driver and identifying features of the vehicle, "lends significant support to the tip's reliability." *Id.* at 399. A concerned citizen placed a call to the 911 emergency system to report a suspected drunk driver. *Id*. The caller provided information that she had been "run off the road" by a vehicle and provided the 911 operator with the suspected drunk driver's vehicle make and model, including license plate number. *Id*. The Supreme Court concluded that this information, coupled with the caller's use of the 911 emergency system which has

safeguards in place to identify callers and guard against false tips, was detailed and specific enough to be a "significant indicator of drunk driving" and justified the officer's reasonable suspicion. *Id*. at 401, 403. In explaining its decision, the Court did not lend any significance to the fact that the officer following the suspected vehicle did not observe any indicators of intoxication stating, "it is hardly surprising that the appearance of a marked police car would inspire more careful driving for a time . . . . [A]n officer who already has such a reasonable suspicion need not surveil a vehicle at length in order to personally observe suspicious driving." *Id*. at 403.

The Texas Court of Criminal Appeals and our sister Courts of Appeals have repeatedly determined that a detailed, contemporaneous, first person report by a 911 caller coupled with the officer's own observations corroborating the reliability of the concerned citizen's tip is enough to justify reasonable suspicion to stop and investigate a driver for suspected DWI. *See Leming v. State*, 493 S.W.3d 552, 565 (Tex. Crim. App. 2016); *see also Oringderff v. State*, 528 S.W.3d 582, 588–589 (Tex. App.—Texarkana 2017, no pet.); *Pate v. State*, 518 S.W.3d 911, 915–916 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *LeCourias v. State*, 341 S.W.3d 483, 488 (Tex. App.—Houston [14th Dist.] 2011, no pet.); (each Court determining that an officer had reasonable suspicion to investigate a suspected intoxicated driver because the 911 caller provided a detailed, reliable report of the alleged intoxicated

9

behavior of the driver including license plate numbers, identifying descriptions of the driver, accounts of erratic driving, or other behavior that indicated intoxicated driving, which information was then objectively verified by the officer when observing the allegedly intoxicated driver); *compare with State v. Jennings*, 511 S.W.3d 306, 311–312 (Tex. App.—San Antonio 2016, no pet.) (The Court of Appeals affirmed a trial court's decision to grant defendant's motion to suppress because the arresting officer did not have reasonable suspicion to detain the defendant when he relied on a "subjective opinion" from an employee of a nursing home that a person was intoxicated without additional "specific, articulable facts." The State did not call the 911 dispatcher or admit the 911 recording into evidence, and the officer testified that he did not observe the defendant violate any traffic laws or appear to be intoxicated after she left the nursing home. The Court held that the State failed to demonstrate the "specific, articulable facts" that would justify reasonable suspicions of drunk driving.).

During the suppression hearing, Lee testified that she was conducting a DWI investigation when she approached Jefferies in her vehicle. She stated she believed she had probable cause to approach Jefferies to conduct this investigation because of the information relayed to the 911 dispatcher by the concerned citizen and her own observations as she approached the vehicle. The State admitted into evidence

the audio recording of the 911 call placed by the concerned citizen and the dispatcher logs at the suppression hearing. The 911 caller identified himself and then identified Jefferies's car in the drive-through lane by her license plate. He stated that he was in front of her in line and that he observed Jefferies attempting to order from another fast food restaurant's menu, exiting her car to vomit, and she was passed out for at least five minutes in the line. Lee testified that she responded to the 911 call about the potentially intoxicated person in the drive-through lane, and before she approached Jefferies's vehicle, she was aware of the information provided by the 911 caller. As she approached Jefferies's vehicle, she observed vomit on the ground by Jefferies's car, Jefferies's bloodshot eyes, flushed faced, and "an odor of an unknown alcohol beverage emitting from the vehicle." Lee had enough reasonable suspicion to detain and investigate Jefferies for DWI, because Lee's own observations of Jefferies corroborated the information provided by the 911 caller.

In her brief, Jefferies relies on a case from our sister Court that on its face has similar facts but is distinguishable. Jefferies cites to *State v. Griffey*, in which the trial court granted a motion to suppress on the grounds the arresting officer lacked reasonable suspicion to investigate or detain the defendant for a possible DWI. 241 S.W.3d 700, 702 (Tex. App.—Austin 2007, pet. ref'd). In *Griffey*, an unidentified manager of a fast food restaurant called 911 and reported that a person was "passed

11

out behind the wheel in the drive-through lane." *Id.* at 702. The caller did not provide any additional information. *Id.* When the officer arrived at the fast food restaurant, he observed the driver of the vehicle was awake and waiting in the drive-through lane. *Id.* Nevertheless, the officer blocked the drive-through lane and prevented Griffey from leaving the restaurant. *Id.* It was upon Griffey's exit of the vehicle that the officer reported smelling alcohol and Griffey was subjected to a series of field sobriety tests. *Id.* at 703. Griffey argued in a motion to suppress that the officer did not have reasonable suspicion to investigate her for a possible DWI and therefore, her detention and arrest were illegal. *Id.* The trial court agreed and granted Griffey's motion to suppress finding the officer was not authorized by law to initially detain Griffey. *Id.* The Austin Court of Appeals affirmed the trial court's judgment. *Id.* at 702. The Court of Appeals held that the information from the manager of the fast food restaurant did not provide enough information to indicate "criminal behavior." *Id.* at 705. The Court emphasized that "the manager did not report the driver was intoxicated or that [the driver] exhibited any signs of intoxication." *Id.* Further, when the officer arrived at the scene, he testified that the driver was awake. *Id.* at 702. This was in direct contradiction of the managers' report and did not justify "an investigative detention without obtaining any additional corroboration of the managers tip." *Id.* at 705.

12

This case is distinguishable from *Griffey*. The 911 caller identified himself and described in significant detail Jefferies alleged intoxicated behavior. Lee testified the 911 caller provided information that the driver was attempting to order from a different menu than provided by Taco Bell, was continuously exiting her car and vomiting, had passed out in her car, and was blocking the drive-through lane. When Lee arrived at the scene, she observed Jefferies still in the drive-through lane of the Taco Bell sitting in the driver's side of her car with no other passengers, vomit on the ground, Jefferies's red bloodshot eyes and flushed face, along with the distinct smell of alcohol coming from her vehicle. The court in *Griffey* failed to find reasonable suspicion because the responding officer did not corroborate his observations with the citizen tip provided by the anonymous caller, a clear distinction from the facts before the Court in this case, where Lee personally observed and verified the information and behavior of the defendant provided by the 911 caller. We are unpersuaded by Jefferies's argument that Lee's reliance on the statements provided by the 911 caller failed to establish reasonable suspicion that Jefferies was possibly intoxicated. [2]

---

[2] Jefferies relies on two additional cases in her brief that she contends illustrate that the police lacked reasonable suspicion to detain and arrest for DWI. Both cases are distinguishable from the facts before us. First, Jefferies cites to *Hernandez v. State*, in which an officer observed a vehicle in a parking lot at 2 a.m., with the vehicle's headlights on, turn signal blinking, and driver's side door open. 376

## Conclusion

Based on the totality of the circumstances, we conclude the record from the suppression hearing contains sufficient, articulable facts from which the trial court could have determined that the initial detention of Jefferies was objectively reasonable. We therefore conclude the trial court did not err in denying Jefferies's

---

S.W.3d 863, 866 (Tex. App.—Fort Worth 2012, no pet.). After the officer pulled behind the driver, the driver pulled forward and stopped suddenly, slamming his head on the steering wheel. *Id*. When the officer approached the driver, he smelled alcohol and ultimately arrested the driver for DWI. *Id*. The Fort Worth Court of Appeals reversed the trial court's denial of the driver's motion to suppress holding, in part, that the officer did not "articulate any specific facts" combined with any rational inference that would lead him to conclude that the driver was, had been, or was about to engage in criminal activity, and therefore he did not have reasonable suspicion to detain the driver. *Id.* at 870. *Hernandez* is not analogous to the case before this Court. In *Hernandez*, the officer did not rely upon information provided by a 911 caller of a possible intoxicated driver. Accordingly, the officer's initial observations did not objectively provide enough information to give the officer reasonable suspicion of the driver's intoxication.

Jefferies further relies on *Stewart v. State*, arguing that the Austin Court of Appeals held an officer did not have reasonable suspicion to investigate a driver for DWI because the officer did not observe the driver break any traffic laws or drive erratically. 22 S.W.3d 646, 648 (Tex. App.—Austin 2000, pet. ref'd). The information the officer relied upon in that case was from an anonymous call stating that the driver "fell down a couple of times . . . and appeared to be highly intoxicated" while at a gas station. *Id.* This information "was uncorroborated…[and] did not objectively support reasonable suspicion that [the driver] was driving while intoxicated." *Id*. at 650. The information received from the anonymous caller did not corroborate with the officer's own observations of the defendant's behavior and failed to provide reasonable suspicion, whereas, in the case before us, the police officer's observations of Jefferies as she approached her vehicle objectively verified the information provided by the 911 caller that Jefferies was possibly intoxicated.

motion to suppress. We overrule Jefferies's sole issue on appeal and affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on August 15, 2018
Opinion Delivered January 30, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.