**Opinion issued February 6, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-18-00925-CR**
_____

**BRIAN KEITH HOUSTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 2**
**Guadalupe County, Texas[1]**
**Trial Court Case No. CCL-17-0130**

---

**MEMORANDUM OPINION**

---

[1]     Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal to this Court. *See* Misc. Docket No. 18–9130 (Tex. Sept. 26, 2018); *see also* TEX. GOV'T CODE ANN. § 73.001 (authorizing transfer of cases). We are unaware of any conflict between the precedent of the Court of Appeals for the Third District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

After the trial court denied his motion to suppress evidence, appellant, Brian Keith Houston, with an agreed punishment recommendation from the State, pleaded guilty to the misdemeanor offense of driving while intoxicated ("DWI").[2] In accordance with the plea agreement, the trial court assessed his punishment at confinement for 365 days and a fine of $1,000. The trial court then suspended appellant's sentence, probated his fine, and placed him on community supervision for a period of twenty-four months, with the conditions of three days' confinement and the completion of a Veteran's Court treatment program. In two issues, appellant contends that the trial court erred in denying his motion to suppress evidence.

We affirm.

## Background

At a hearing on appellant's motion to suppress, Seguin Police Department Officer T. Brown testified that around 7:00 p.m. on December 12, 2016, she was alerted by dispatch about a tip from a call for emergency assistance. The caller identified appellant by name and reported that appellant was driving recklessly in an older Buick car with license plate number DMS 5258. The caller informed the emergency-assistance operator that before driving away, the caller saw appellant urinating next to appellant's car in the driveway of appellant's home and falling as

---

[2]  *See* TEX. PENAL CODE ANN. § 49.04(a), (c), (d).

he tried to enter the car. The caller further stated that appellant had driven to a nearby convenience store where he parked his car.

Officer Brown drove by the convenience store but did not see a car matching the caller's description. A short time later, at 7:16 p.m., dispatch relayed information from a second emergency-assistance call to Brown. That caller described a four-door gray car with a license plate of BMF 5258 that had pulled into the parking lot across the street from the Koehler Company, a business near the intersection of North Camp Street and New Braunfels Street. The caller further stated that the driver had "almost hit a trash can and that he appeared to be driving in oncoming traffic."

Officer Brown went to the location, where she found a tan car with plate number DMS 5258, parked diagonally in the empty lot, with its motor running. As Brown approached the car, she noticed that appellant, who was sitting in the driver's seat, had his eyes open but his head was slumped over as if he was sleeping or had "passed out." He appeared disoriented and moved slowly but cooperated with Brown's request that he step out of the car. The smell of alcoholic beverage emanated from the car when appellant opened the door and when he began to stand, he nearly fell on Brown and another assisting law enforcement officer. Brown and the other officer helped steady appellant, but he could not balance himself upright without leaning on the car.

Appellant told Brown that he had argued with his wife while she was getting ready to leave for her dance class and he left his house when he began to experience a "PTSD meltdown." Appellant admitted to drinking half of a bottle of vodka before getting in his car, an older Buick, and leaving his residence. Brown noticed more than five empty vodka bottles scattered in the car and another vodka bottle missing about one-quarter of its contents tucked in between the driver's seat and the center console. She administered field sobriety testing.

## Standard of Review

We apply a bifurcated standard to review a trial court's denial of a motion to suppress evidence. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but reviews the trial court's application of the law to the facts de novo. *Id.* At a suppression hearing, the trial court is the sole trier of fact and judge of a witness's credibility, and it may choose to believe or disbelieve all or any part of the witness's testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When, as here, a trial court does not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling. *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We give almost total deference to a trial court's implied findings, especially those based on an evaluation of witness credibility or demeanor. *Valtierra v. State*,

4

310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* at 447–48 & n.19.

## Motion to Suppress

In his first issue, appellant argues that the trial court erred in denying his motion to suppress because Officer Brown lacked reasonable suspicion of criminal activity sufficient to justify his detention.

A law enforcement officer may temporarily detain a person for investigative purposes if the officer reasonably suspects that the detained person is, has been, or soon will be engaged in criminal activity. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 881–82 (1975)); *Pate v. State*, 518 S.W.3d 911, 914 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Whether reasonable suspicion exists depends on "both the content of information possessed by [a law enforcement officer] and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990), *quoted in Navarette v. California*, 572 U.S. 393, 397 (2014). Reasonable suspicion exists when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. *Navarette*, 572 U.S. at 397.

Courts determine whether reasonable suspicion exists by objectively viewing the totality of the circumstances. *Id.* The detaining law enforcement officer need

5

not personally be aware of every fact that supports a reasonable suspicion to detain because the content of the information possessed by law enforcement officers includes the totality of the information known collectively to the cooperating officers, including emergency dispatchers. *See Derichsweiler v. State*, 348 S.W.3d 906, 915 (Tex. Crim. App. 2011).

A traffic stop may be justified if the facts underlying the stop are observed by a civilian informant. *Pate*, 518 S.W.3d at 914; *see also Navarette*, 572 U.S. at 397. Courts have identified several indicia of reliability about tips from a citizen informant. For example, an informant may be treated as more reliable if he provides a firsthand account and a detailed description of wrongdoing. *Hawes v. State*, 125 S.W.3d 535, 539 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Navarette*, 572 U.S. at 399–400 (observing contemporaneous eyewitness reports of suspected criminal activity have "long been treated as especially reliable"). Courts also consider an informant who is not connected with law enforcement officers to be inherently trustworthy when advising officers of suspected criminal activity. *Taflinger v. State*, 414 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Even an anonymous tip, if supported by other "sufficient indicia of reliability," may be enough to justify a stop. *See Navarette*, 572 U.S. at 397. Texas courts have consistently concluded that a detailed, contemporaneous, first-person

report by an emergency-assistance caller coupled with a law enforcement officer's own observations corroborating the reliability of the concerned citizen's tip is enough to justify reasonable suspicion to stop and investigate a driver for a suspected DWI offense. *See Leming v. State*, 493 S.W.3d 552, 565 (Tex. Crim. App. 2016); *Pate*, 518 S.W.3d at 915–916; *Oringderff v. State*, 528 S.W.3d 582, 588–589 (Tex. App.—Texarkana 2017, no pet.); *LeCourias v. State*, 341 S.W.3d 483, 486, 488 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Appellant argues that the trial court erred in denying his motion to suppress because the emergency-assistance calls failed to convey and corroborate sufficient particularized information to support a reasonable suspicion of criminal behavior.

In *Navarette*, the Supreme Court analyzed whether information provided by a single anonymous caller contained enough indicia of reliability to justify an investigative stop. In that case, highway patrolmen received a report from an anonymous emergency-assistance caller that a silver Ford F–150 pickup truck traveling southbound on the highway had run the caller off the road. 572 U.S. at 395. A few minutes later, a highway patrolman encountered a truck matching the one described by the caller traveling in the direction the caller had reported. *Id.* Although the highway patrolman did not personally observe the truck driving erratically, the Court held that the caller's tip contained adequate indicia of reliability to support a reasonable suspicion for a stop, given that it was based on eyewitness

knowledge, contemporaneous, and reported to the "911 emergency system." *Id.* at 398–99, 400.

Appellant acknowledges that the record refers to the emergency-assistance callers here as "identified," but asserts that our analysis should treat them like the anonymous *Navarette* caller because the record does not specifically identify them. When informants identify themselves, they make themselves potentially accountable for the intervention, and the degree of reliability and weight given to the information provided significantly increases. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

The circumstances that led to treating the emergency-assistance caller in *Navarette* as anonymous are distinguishable from those here. In *Navarette*, evidentiary issues unique to California state law prevented the state from proving up the caller's identity, so it effectively conceded that the caller was anonymous. *See* 572 U.S. at 396 n.1; *People v. Navarette*, No. A132353, 2012 WL 4842651, at *4–5 (Cal. App. Oct. 12, 2012). Here, the unequivocal evidence describes the emergency-assistance callers as identified, and appellant, in the trial court, raised no evidentiary objection to Officer Brown's testimony on that matter. *Compare Martinez*, 348 S.W.3d at 924–25 (emergency-assistance caller described as anonymous and stating caller's identifying information was not revealed before stop) *with Derichsweiler*, 248 S.W.3d at 915 (emergency-assistance callers identified

themselves to emergency dispatcher and thus constituted known sources for information provided).

*Navarette* is also distinguishable from this case because it involved a single caller. *See* 572 U.S. at 395–96. Here, two individuals called for emergency assistance within about fifteen minutes of each other, and the second caller corroborated much of the information provided by the first caller, as shown below:

| Caller #1 (near 7:00 P.M.) | Caller #2 (near 7:15 P.M.) |
| --- | --- |
| Appellant (identified by name) urinated by his car in the driveway at his home address; appellant fell in the driveway while getting into his car. | |
| Appellant was driving an older Buick car, license plate DMS 5258. | Person was driving a four-door gray car, license plate BMF 5258. |
| Appellant drove recklessly. | Person almost hit trash cans with car and appeared to drive into oncoming traffic. |
| Appellant parked his car at "Quickie Bee's" convenience store. | Person parked car in the lot across the street from The Koehler Company (located less than one mile away from appellant's home address and less than one mile away from "Quickie Bee's" convenience store).[3] |

---

[3] Although the parties did not present evidence of the distance between these locations, we may take judicial notice of these geographical facts as they are not subject to dispute. *See* TEX. R. EVID. 201(b); *In re Marriage of Christensen*, 570 S.W.3d 933, 936 n.3 (Tex. App.—Texarkana 2019, no pet.); *Lopez v. State*, No. 08-15-00008-CR, 2018 WL 2173933, at *7 (Tex. App—El Paso May 11, 2019, no pet.) (mem. op., not designated for publication) (citing *Harper v. Killon*, 348 S.W.2d 521, 523 (Tex. 1961)).

Appellant observes that Caller #1's description that appellant was "driving recklessly," standing alone, lacked the detail that would make it independently reliable. But the initial report also conveyed specific information about appellant falling as he tried to enter his car, and Caller #2, reporting that a gray, four-door car almost hit a trash can and appeared to drive into oncoming traffic—contained particularized information that corroborated the initial report. Taken together, these first-hand reports convey information that the driver of the car—appellant—had impaired balance and driving skills, indicia that are often associated with drunk driving. *See Navarette*, 572 U.S. at 402.

Appellant also asserts that inconsistencies in the reports make them less reliable, including the differences between (1) the license plate reported by Caller #1 and that reported by Caller #2, and (2) Caller #2's identification of the car's color as gray and Officer Brown's description of the car's color as tan. Brown's testimony, however, reconciles these perceived differences. Based on her nearly twenty years of experience as a law enforcement officer, Brown testified that small differences between the license plate characters and color descriptions of the car did not detract from the overall reliability of the information provided by the emergency-assistance callers. As for the discrepancy in the reported license plate characters, she observed that citizen informants often make similar errors when they try to memorize the characters to report them. Brown opined that it was more

significant that Caller #2 reported the same four digits for the license plate that Caller #1 had and that Caller #2's physical description of the car fit with that provided by Caller #1. After finding the car parked in the location reported by Caller #2, Brown confirmed that it had the same license plate reported by Caller #1.

In discounting the varied descriptions of the car's color, Officer Brown noted that it was already dark outside on that winter evening, which would obscure color, and that various words could describe the car's color. Appellant, himself, acknowledged at the motion to suppress hearing that the color of his car could be described in various ways, such as bronze, brown, gold, or tan, and conceded that it would be harder to identify its color at night.

Finally, appellant asserts that the callers' reports to the emergency-assistance operators lack sufficient detail about the direction that the car had come from or when the caller had last seen the car. Those details were significant in *Navarette*, where the highway patrolman could confirm the location of the southbound truck based on the highway mile marker identified by the emergency-assistance caller and the roughly eighteen minutes that had elapsed between the call and the truck's sighting. *See* 572 U.S. at 399. But here, the direction appellant was driving has minimal significance because of the three reported locations' close proximity to each other.

11

Appellant also asserts that no evidence shows that the emergency-assistance calls were contemporaneous. The record does not support this assertion. Appellant testified that he left the house over an argument with his wife, who was getting ready to leave for her dance class. He told the trial court that she usually left for her dance class at around 7:15 p.m. The emergency-assistance calls came in at around 7:00 p.m. and 7:15 p.m., and Officer Brown encountered appellant in the parking lot identified by Caller #2 by 7:16 p.m. The record supports the trial court's implicit finding that the emergency-assistance calls were made at or near the times of the callers' observations.

Based on the totality of the circumstances, we conclude that the evidence from the suppression hearing contains sufficient, articulable facts from which the trial court could have determined that Officer Brown had reasonable suspicion of criminal activity to detain appellant. For these reasons, we hold that the trial court did not err in denying appellant's motion to suppress.

We overrule appellant's first issue. Because of our disposition of appellant's first issue, we need not address his second issue. *See* TEX. R. APP. P. 47.1.

12

## Conclusion

We affirm the judgment of the trial court.

Julie Countiss
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).